at the Court House in the city of Rochester," and that Lent informed him and Matteson, that after he (Ray) had levied upon defendants' property, Johnson called on Lent and took the execution and altered it in teste thereof as stated; and that Lent informed them he would swear to the fact if necessary. Lent had since left this part of the country, and his affidavit could not be procured. Ray also stated that he had seen Johnson's law register, in which this cause was entered, that from the entries therein, it appeared that the execution which was delivered to Lent had been altered. Ray also stated that he had made search, and the execution in this cause could not be found returned. The facts stated by Ray were substantially corroborated by other affidavits.

*JAMES EDWARDS, *plaintiff's counsel.*                    [*67]
B. P. JOHNSON, *plaintiff's attorney.*
C. H. DOOLITTLE, *counsel apposed.*
MATTESON & DOOLITTLE, *attorneys opposed.*

---

LEWIS KEEFER, defendant in error, agt. HENRY I. KEEFER, plaintiff in error.

A question of the statute of limitations to a writ of error can be taken advantage of only by plea. (11 *Wend.* 522.)

Whether a bill of exceptions has been signed by enough judges, is a question which does not arise on motion. If there is not a legal bill of exceptions, the plaintiff in error can only rely upon errors in the judgment record.

Where a defendant in error moves to set aside a writ of error and bill of exceptions for irregularity, in not noticing the bill of exceptions for settlement within the time required by the rules of court, he will be defeated; where the plaintiff in error shows that the attorney for defendant in error consented or did not object to go before a judge for settlement, after the time had expired.

*February Term*, 1846.

MOTION by defendant in error to set aside writ of error, bill of exceptions and subsequent proceedings in this cause, for irregularity.

On the part of the defendant in error, it appeared that this cause originated in a justice's court, commenced by Lewis Keefer against Henry I. Keefer; Lewis Keefer obtained judgment over $25. Henry I. Keefer appealed to the Dutchess common pleas. On the 26th September, 1843, the cause having been brought on for trial, the court non-suited the plaintiff, Lewis Keefer, and a rule for judgment of non-suit was then entered. On the 23d November, 1843, the attorney for Lewis Keefer served upon the attorney for Henry I. Keefer a copy bill of exceptions in the cause; a written stipulation having been given, giving sixty days to serve the exceptions, and sixty days were also given to propose amendments to the bill; within sixty days amendments were prepared, and on the 18th January, 1844, were served on A. L. Pinney, Esq., attorney for Lewis Keefer, by leaving them with his wife at his place of residence, he being then absent from home and no one being in his office; another copy amendments was enclosed and addressed to A. L. Pinney, Esq., at Albany, and postage paid, where A. L. Pinney was residing during that winter. On the 28th July, 1845, a notice was served by Pinney on W. Eno, attorney for Henry [*68] I. Keefer, that the bill of exceptions would be settled before Judge WOODWORTH, before whom the cause was tried on the 4th of August, 1845. On the 4th of June, 1845, the record of judgment in the cause was filed in the Dutchess county clerk's office. On the 15th October, 1845, Pinney served notice on Eno, that a writ of error had been brought to remove the judgment and proceedings into this court;

which writ was tested in July, and returnable in October, 1845; also at the same time notice of bail, &c., were served. On the 13th December, 1845, the writ of error and return were filed.

Eno, attorney for defendant in error, alleged that the bill of exceptions was settled under the rules of the Dutchess common pleas, according to the amendment served, which provided, that if the party omitted, within four days thereafter, to notify an appearance before the judge, after the other party had proposed amendments, the opposite party should be deemed to have agreed to the amendments as proposed. He also alleged he had not directly or indirectly consented that the time for settling the bill of exceptions should be any different from that prescribed by the rules of the court, or that any notice of appearance before the judge, to settle the same, should be waived; that he did not attend before Judge Wood-worth at the time noticed, nor any other time, to settle the bill of exceptions, and had never agreed to settle it before Judge Woodworth. He also alleged that the amendments served were not allowed and incorporated in the bill of exceptions, except one amendment, the most material being omitted. Defendant in error made the following points:

1st. The writ of error was not brought in the two years prescribed by the statute (2 *R. S.* 493, § 21; 11 *Wend.* 522); and insisted it was not brought till perfected and filed in the clerk's office.

2d. The bill of exceptions was irregular in being signed by only one judge (13 *John.* 321); remedy, to set aside on motion. (10 *Wend.* 255).

3d. The bill of exceptions was made wrong, the amendments should have been adopted (*Rule* 20); Dutchess common pleas.

4th. The certificate of the judge was before record filed (*Sess. Laws*, 1836, 794).

It appeared on the part of the plaintiff in error, that Pinney informed Eno, about the time the bill of exceptions was served, that he had left his papers and the charge of this cause in the

hands of Walter Reynolds, Esq. (Reynolds and Eno residing at the same place), as he expected to be absent from home and would not be able to attend to it, and service of papers could not be made on Reynolds. Reynolds made out [*69] the bill of *exceptions and served it. In December, 1843, he (Pinney) left home for Albany, and remained there till May, 1844. Some time after the June term, 1844, of the Dutchess common pleas, he found in his office a copy of amendments to the bill of exceptions proposed by Eno; that soon thereafter, he spoke to Eno about settling the exceptions, and asked him if they should go down before Judge JACKSON, first judge of Dutchess county, and settle them. Eno replied that he supposed he could compel him (Pinney) to take his amendments as proposed; he (Pinney) told him he thought not. It was then understood between them, that they should wait until the September term of the common pleas, when they would see Judge JACKSON at court, and then settle them. At the September term of the court, Pinney spoke to Eno about settling the exceptions; Eno said he had not got his papers in the cause with him; Pinney asked Eno what was to be done about it; Eno said he must either get them before court was over, or it would have to go off until the next term of the court. Pinney heard no more from it at that term. At the February term, 1845, Judge JACKSON did not attend court; between that time and the next June term, Pinney spoke to Eno about going to Fishkill before Judge JACKSON, and settling the exceptions, as Judge JACKSON's term of judge had expired, and he would not attend court again. Eno replied that he believed Judge JACKSON did not try the cause, it was tried before Judge WOODWORTH and the bill would have to be settled by him; Pinney told Eno to fetch his papers at the next June term (1845), and Judge WOODWORTH would then settle the exceptions. At the June term, Pinney spoke to Eno in relation to going before Judge WOODWORTH to settle the exceptions; and Eno replied, " Oh, let that matter go;" Pinney answered he could not. Pinney then had suspicions that Eno did not intend to settle the ex-

ceptions; and he thereupon served the notice for settlement on the 28th July, 1845, for the 4th of August following; when the bill of exceptions was settled and signed by Judge WOODWORTH; such of the amendments proposed by Eno was adopted by the judge, as he said was correct, being a part of several of the amendments which were incorporated in the bill of exceptions.

It was stated that Walter Reynolds, Esq., died in January, 1844. Pinney stated that he never received any amendments while in Albany, and no amendments or notice of amendments, except those found in his office, as before stated; he was not aware that the costs had been taxed, or record filed until a few days before the last Monday in September, 1845; he never had been served with a bill of costs and notice of taxation.

C. STEVENS, *counsel moving.* [*70]

WM. ENO, *attorney for defendant in error.*

R. W. PECKHAM, *counsel opposed.*

A. L. PINNEY, *attorney for plaintiff in error.*

BRONSON, Chief Justice. The affidavits and notice of motion seem to point at nothing beyond a supposed irregularity in settling the bill of exceptions, and as to that, the motion is sufficiently answered in the opposing papers. If it was intended to make a question, whether the statute of limitations had not run upon the writ of error, that should have been done by plea. (11 *Wend.* 522.) Whether the bill of exceptions has been signed by enough judges, is a question which does not arise on motion. If there is not a legal bill of exceptions, the plaintiff in error can only rely upon errors in the judgment record. As to the judge's certificate, I am unable to see what objection the defendant in error intended to make; of course the plaintiff in error could not know what he was required to answer. Motion denied.